UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BELINDA ANN OLIVER,  )
          Plaintiff,  ) Case No. 1:08-cv-388
)
v.  ) Honorable Robert Holmes Bell
)
COMMISSIONER OF  )
SOCIAL SECURITY,  )
            ) **REPORT AND RECOMMENDATION**
          Defendant.  )
_____)

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. On September 27, 2004, plaintiff filed her application for SSI benefits, claiming a May 14, 2004 onset of disability.[1] Her claim was denied on initial review. (A.R. 40-41, 56-59). On October 17, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 682-717). On November 2, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 19-28). On March 13, 2008, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

---

[1] The earliest date a claimant for SSI benefits is eligible for benefits is the month after the application for benefits is filed. 20 C.F.R. § 416.501. Thus, October 2004 is the earliest date plaintiff could possibly be entitled to SSI benefits.

On April 25, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. Plaintiff's statement of errors[2] is set forth verbatim below:

I. WHETHER THE PLAINTIFF IS ENTITLED TO A PERIOD OF SOCIAL SECURITY DISABILITY INSURANCE BENEFITS UNDER SECTIONS 216(I) AND 223 OF THE SOCIAL SECURITY ACT, AS AMENDED.

    A. The Decision by the ALJ That the Plaintiff Is Not Disabled Is Not Supported by Substantial Evidence in the Record.

        i. The ALJ erred in Her Listing of the Severe Impairments of the Plaintiff When She Did Not List and Properly Discuss the Headaches, Hypertension, Diabetes, Obesity, and the Chronic Low Back Pain. These Disabilities Are Clearly Documented in the Clinical Record.

        ii. Plaintiff Is So Impaired by Her Low Back Condition And Bi-lateral Carpal Tunnel Syndrome That She Cannot Attend to the Full Range of House Work Requirements Without Assistance. These Impairments Are Severe and the ALJ Did Not Analyze them in Accordance with 20 C.F.R. § 404.1520.

    B. The ALJ Failed to Give Adequate Weight and Consideration to the Combined Effects of the Severe and Non-severe Impairments. from Both Exertional and Non-exertional Disabilities of the Plaintiff to Include Laceration to the Right Forearm, Bilateral Carpal Tunnel Syndrome, Hypertension, Angina, Low Back Pain, Bronchitis, Diabetes, Blurred Vision, Side Effects of Medications, Anxiety, Limited Intellectual Functioning, Dysthymic Disorder and Depression Contrary to 20 C.F.R. § 404.1527.

        i. The ALJ Is Required to Discuss in Detail Each of the Documented Disabilities of the Plaintiff and Their Impact on Her Ability to Perform Substantial Gainful Activity under SSR 96-8p.

        ii. The Physical Residual Functional Capacity Assessment of the Disability Determination Service Relied on by the ALJ Is Fatally Flawed as it Does Not Accurately Represent the Limitations on

---

[2] The Statement of Errors contains multiple references to disability insurance benefits (DIB) and related regulations. These erroneous references have been treated as if plaintiff had cited the applicable regulations governing SSI claims.

> Activity Suffered by the Plaintiff, and Does Not Consider All of Her
> Medical Conditions.
>
> iii. The ALJ's Finding That the Limitations Described by the Plaintiff
> Were Not Fully Credible Is Contrary to the Record and the Law.

(Plf. Brief at V, docket # 10). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity since her application date of September 27, 2004. (A.R. 21). She found that plaintiff had the following severe impairments: "atypical chest pain; carpal tunnel syndrome, post release; mild facet disease; dysthymic disorder; depression; anxiety; and alcohol abuse, apparently in remission." (A.R. 21). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 22). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 24-27). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift or carry a maximum of 20 pounds occasionally and 10

pounds frequently. In an eight-hour workday, the claimant can walk or stand for six hours and sit for six hours. She should only occasionally use ladders, ropes or scaffolds. The claimant should do no twisting or crawling. She should only occasionally push or pull with bilateral upper extremities. The claimant should only frequently handle or finger with both hands. She should use no vibrating tools. The claimant reads at a sixth grade level. She can only do simple unskilled work, with a specific vocational preparation (SVP) rating of 1 or 2, that does not involve maintaining intense concentration, although she can remain on task. The claimant can only perform jobs that have brief and superficial contact with the public, and are routine low stress that do not involve frequent changes or adaptations. She can only do jobs that [do not] require initiative or making independent decisions. The claimant can do no jobs with production quotas or keeping pace with co-workers.

(A.R. 24, *see also* A.R. 709). The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because she remained capable of performing her past relevant work as a housekeeper as she had performed it, and as it is generally performed.[3] (A.R. 27).

**1.**

Plaintiff argues that the ALJ erred because she failed to list plaintiff's headaches, hypertension, diabetes, obesity, and chronic low back pain as additional severe impairments. (Plf. Brief at 10). This argument is meritless.

The ALJ found at Step 2 of the sequential analysis that plaintiff had severe impairments of "atypical chest pain; carpal tunnel syndrome, post release; mild facet disease; dysthymic disorder; depression; anxiety; and alcohol abuse, apparently in remission." (A.R. 21).

---

[3]The ALJ did not reach Step 5 of the sequential analysis, but her opinion makes clear that she would have found plaintiff was not disabled at Step 5 because plaintiff remained capable of performing other jobs existing in significant numbers in the economy. Plaintiff was thirty-eight years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim, she was classified as younger individual. Plaintiff has a limited education and is able to communicate in English. The vocational expert (VE) testified in response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, that there were approximately 26,700 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 709-10). The ALJ found that this constituted a significant number of jobs. (A.R. 27).

To the extent that plaintiff is arguing that the ALJ's decision should be overturned because the ALJ failed to find additional severe impairments at Step 2, her argument is patently meritless. The finding of a severe impairment is a threshold determination. One severe impairment suffices to advance the sequential analysis to the next step. Here, the ALJ found seven, thus moving the analysis to the next step. The failure to find additional severe impairments is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2008); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Further, the record fails to document that plaintiff had any significant functional restrictions stemming from headaches, hypertension, diabetes, or obesity, or low back pain. The ALJ found that the record did not support plaintiff's testimony regarding her headaches: "The claimant testified that she has headaches four to five days per week and they last a couple hours. The undersigned finds this to be a non-severe impairment. There is no medical evidence concerning the claimant's headaches and no treatment record." (A.R. 22). Plaintiff gave the following testimony regarding her headaches:

Q     When did you start having problems with headaches?

A     About six years.

Q     How often do you have headaches?

A     At least four or five days a week.

Q     And how long do they last?

A     They'll stay if I don't take anything. It lasts for a couple of hours.

Q     What do you take for them?

> A	I take Midrin [phonetic], all kind[s] of stuff, Excedrin, Motrin, just some many different things.
>
> Q	Do the medications help?
>
> A	Eventually they help. They just take a long time.

(A.R. 695). Plaintiff states in her brief that she suffers headaches as a side-effect of her Nitroquick medication. (Plf. Brief at 4, 7, 14). She offered no testimony supporting this assertion. She did testify that the most she had ever used "nitro" was three times per week. (A.R. 693). The ALJ's factual finding that plaintiff's headaches did not result in significant functional restrictions is well-supported.

Plaintiff argues, but failed to prove, that she has been a "borderline diabetic for many years." (Plf. Brief at 7) (citing A.R. 104, 293, 520). She did not submit evidence of a medical diagnosis of diabetes,[4] and there is no evidence that she required treatment. The cited portions of the record do not support her argument. Page 104 is part of her October 27, 2004 statement regarding her daily activities. It says nothing about diabetes. Page 293 is a July 9, 1999 emergency room record in which plaintiff stated that she had a history of "diet-controlled" diabetes, but at the same time related that she was a frequent and heavy user of alcohol. (A.R. 239). Page 520 is a November 18, 2004 lab test showing that plaintiff's glucose level was high at 117 mg/dL. (A.R. 520). Nothing in the record indicates that plaintiff had diabetes-related functional restrictions.

Plaintiff argues that she "became hypertensive to a significant degree in 2004. (170/98 in October 2004; 160/90 in January 2005)" (Plf. Brief at 6) (citing A.R. 384). The vast majority of plaintiff's blood pressure readings were lower than the two she highlighted in her brief.

---

[4] On May 28, 1994, plaintiff was described as a "gestational diabetic" during the third trimester of a pregnancy. (A.R. 492).

(*See, e.g.* A.R. 321, 344, 358, 363, 374, 379, 501). It is not the least bit surprising that plaintiff's tests have occasionally indicated that her blood pressure is high. She has decided to continue smoking despite a medical record replete with instructions from her physicians telling her to quit. There is no evidence of any functional limitation related plaintiff's occasional high blood pressure.

Plaintiff's pre-hearing brief did not list obesity as an impairment. (A.R. 110). Her treating and examining physicians generally did not describe plaintiff as being obese. On July 9, 2007, plaintiff testified that she was 5 feet 4 inches tall and that she weighed 149 pounds, and that this was her normal weight. (A.R. 687). She now argues that, "Due to her hand, arm, back and chest wall pain her physical activity has been severely limited. This has resulted in weight gain to 160 pounds and a diagnosis of obesity." (Plf. Brief at 7) (citing A.R. 358). The March 2, 2006 progress note cited by plaintiff described her abdomen as showing "Some mild to moderate obesity." (A.R. 358). The same document emphasized, "the single most important thing [plaintiff] has to do is [to] completely quit smoking." (A.R. 358). Her "cutting down" to a one pack per day was not good enough. (A.R. 358). No treating or examining physician indicated that plaintiff had any obesity-related functional restrictions.

The ALJ found that plaintiff's back pain complaints were not fully credible. (A.R. 26). Plaintiff argues that, "An MRI confirmed a herniated disc at L5-S1 in October of 2007." (Plf. Brief at 7) (citing A.R. 672). Plaintiff's October 2, 2007 MRI did not show a herniated disc. It showed a "mild" bulge at L5-S1. (A.R. 672). June 4, 2007 x-rays showed that plaintiff's lumbar spine had no bony abnormalities. (A.R. 349).

In summary, I find that plaintiff's arguments that the ALJ failed to adequately take her headaches, hypertension, diabetes, obesity, and chronic low back pain into account are meritless.

**2.**

Plaintiff makes a series of overlapping arguments attacking the ALJ's credibility determination. (Plf. Brief at 10-18). She argues that the ALJ should have found her testimony was fully credible, that the ALJ failed to consider the combined effect of her severe and non-severe impairments, and that the ALJ's findings regarding her RFC did not accurately reflect her functional limitations. (Plf. Brief at 10-18). Upon review, I find that none of these arguments provides a basis for disturbing the Commissioner's decision.

This court does not make its own credibility determinations. *See Jordan v. Commissioner*, 548 F.3d 417, 422 (6th Cir. 2008); *see McGlothin v. Commissioner*, 299 F. App'x 516 (6th Cir. 2008). The court cannot substitute its own credibility determination for The ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging The ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to The ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of The ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly

and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). The relevant excerpts from the ALJ's credibility determination are quoted below:

> The claimant testified that she has back, chest, and hand pain. The claimant rated her pain level at a 9 to 10/10. She stated that she has headaches four to five days per week. The claimant testified that she has not used alcohol in 10 years. She stated that she can walk one block, stand or sit for 10 minutes, and is unable to lift a gallon of milk. The claimant testified that it is painful for her to hold small items and she is only able to write for one minute. She stated that she is unable to follow instructions and has concentration problems. The claimant testified that she watches television, but has problems following the story. She stated that friends visit her. The claimant testified that she is paranoid in a group of four or more. She stated that she smokes one pack of cigarettes per day. The claimant testified that she prepares meals, does laundry, washes dishes and goes shopping. She stated that she used to wear wrist splints and is unable to ride in a car very long because of her back.
>
> The claimant testified that she was not able to do a good job as a housekeeper or cashier and did not remember what grade she had completed in school. However, she was able to perform a semi-skilled job. The claimant left her semi-skilled job because it was too much standing and use of her hands, not because she could not understand how to do the job. The claimant testified that her pain level is a 9 to 10/10, but she does not go to the emergency room because they will only give her pain medications. She stated that she uses Midrin, Excedrin, and Motrin for headaches, which helps.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> * * *
>
> The claimant testified that she does not do any kind of activities in the yard, but in March 2006, she stated that she had been raking (Exhibit 14F) [A.R. 359]. The claimant testified that she is only able to sit for 10 minutes, but in May 2005, she stated that she sat about 30 to 60 minutes at a time. The claimant testified she could only walk one block, but in May 2005, she stated that she "does best in an eight hour period if she is walking a lot." The claimant testified that she is unable to lift a gallon of milk, but in May 2005, she reported that she could lift up to 10 pounds with her right hand (Exhibit 14F) [A R. 371].
>
> * * *

> The medical records establish that the claimant has atypical chest pain; carpal tunnel syndrome, post release; mild facet disease; dysthymic disorder; depression; anxiety; and alcohol abuse, apparently in remission. However, in September 2004, the claimant reported that she had been doing a lot with her right hand and it was not slowing her down (Exhibit 2F)[A.R. 166]. In December 2004, the claimant stated that she enjoyed reading, drawing, writing, and cooking. Dr. Strang stated that the claimant's thoughts were organized and rational, and there was no suggestion of a thinking disorder, and she articulated words without difficulty (Exhibit 6F) [A.R. 190-93]. In February 2005, the claimant's surgeon noted that the claimant's incision was well healed and she was able to make a fist and extend her fingers fully (Exhibit 14[F]) [A.R. 567]. In May 2005, Dr. Hoffman noted that the claimant's back pain had a lot to do with her general deconditioning and her smoking. Dr. Hoffman stated that the claimant had good balance and could walk on her heels and toes. Dr. Hoffman averred that the claimant's rapid alternating hand movements and grip were fine. Dr. Hoffman noted that claimant could open and close her hands. In March 2006, the claimant stated that she had been outside raking. In July 2006, the claimant's cardiac tests were all normal (Exhibit 14F)[A.R. 500-04, 657-58]. In October 2007, an MRI of the lumbar spine revealed only mild disc bulge without significant deformity (Exhibit 19F)[A.R. 672]. The claimant does not have any psychotic symptoms and does not need a structured living arrangement.
>
> The claimant has not been fully compliant with her medical treatment. It has been recommended by numerous physicians that the claimant quit smoking, which she failed to do. In February 2005, Peter Chang[,] M.D. of Family Health Center averred that the claimant had an abusive pattern of use of Vicodin[5] (Exhibit 14F)[A.R. 379].
>
> * * *
>
> The claimant's activities and lifestyle detract from suggestions that the claimant is incapable of sustaining all substantial gainful activity by virtue of a mental impairment. The claimant lives with her two minor children and performs a variety of activities of daily living. The evidence does not suggest that the claimant lacks suitable concentration, memory, adaptive, or interpersonal verbal skills for vocational involvement or that she is incapable of performing tasks that are simple, routine, and repetitive in nature.

(A.R. 25-27).

For the reasons set forth below, I find that the ALJ's credibility determination is supported by more than substantial evidence. The ALJ did not reject plaintiff's assertions wholesale,

---

[5]The ALJ did not reach the point of the sequential analysis where it was necessary for her to make a finding whether plaintiff's Vicodin abuse was material to a finding of disability. 20 C.F.R. § 416.935.

but carefully compared plaintiff's claims to the medical evidence, plaintiff's prior inconsistent statements, and the evidence concerning her daily activities. The ALJ is to consider the evidence as a whole and is not bound to accept exaggerated claims of impairment that are not corroborated by the evidence.

    A.    <u>Combined Effects of Plaintiff's Severe and Non-severe Impairments</u>

Plaintiff argues that the ALJ failed to consider the combined effect of her severe and non-severe impairments. (Plf. Brief at 13-15). The ALJ's stated that he considered plaintiff's impairments in combination. (A.R. 20). Given this statement, the ALJ is not required to further elaborate upon his thought processes. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Simons v. Barnhart* 114 F. App'x 727, 734 (6th Cir. 2004) (The ALJ stated that he was obligated to consider all the claimant's symptoms, found that the claimant had an impairment or combination of impairments that were severe, and the lack of a separate discussion of each of the claimant's multiple impairments "does not mean that the [ALJ] did not consider their combined effect."). Plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.

    B.    <u>Great Weight of the Evidence</u>

Plaintiff argues that "the great weight of the evidence" supports her statements. (Reply Brief at 3, docket # 12). This is not the applicable standard of review. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003).

C.   Specificity of the ALJ's Credibility Determination

Plaintiff argues that the ALJ "failed to address the Plaintiff's psychological and pain limitations as they impact her physical and occupational capabilities to the requisite degree of specificity." (Reply Brief at 12). I find that plaintiff's argument is meritless.

In *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit reiterated that, "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." However, the ALJ's credibility determination must find support in the administrative record and must be sufficiently specific to permit meaningful appellate review:

> [T]he ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Rogers*, 486 F.3d at 247-48 (footnote omitted). The Court of Appeals explained, "The requirement that the Commissioner fully explain his determinations of the claimant's credibility is grounded, at

-13-

least in part, upon the need for clarity in later proceedings." *Id.* at 248 n.5. "In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Id.* (quoting *Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985)). The ALJ's credibility determination, previously quoted at length herein, is supported by more than substantial evidence. The ALJ provided a very detailed explanation why she found that plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (A.R. 25-27). It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find no error.

D.  ALJ's RFC Determination

(1)  SSR 96-8p

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she did not comply with SSR 96-8p's requirement that he consider plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. (Plf. Brief at 14-15). The ALJ was well aware that, "An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." (A.R. 20) (citing SSR 96-8p). The ALJ made a function-by-function assessment of plaintiff's "exertional (lifting, carrying, standing, walking, sitting, pushing and pulling), and non-

exertional (manipulative, postural, visual, communicative and mental functions) capacities." *Delgado v. Commissioner*, 30 F. App'x 542, 547 (6th Cir. 2002); *see Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 98-8p (reprinted at 1996 WL 374184, at * 1 (S.S.A. July 2, 1996)); *White v. Commissioner*, 312 F. App'x 779, 786 (6th Cir. 2009). RFC is an administrative determination made by the ALJ based upon all the evidence within the record. *Walters v. Commissioner*, 127 F.3d 525, 530 (6th Cir. 1997); *see Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). "[S]tatements from medical sources about what a claimant can still do are relevant evidence, but they are not determinative inasmuch as the ALJ has the ultimate responsibility of determining disability and residual functional capacity." *Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most." SSR 98-8p, 1996 WL 374184, at * 1; *see* 20 C.F.R. § 404.945(a); *see Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). I find that the ALJ complied with the requirements of SSR-96-8p.

    (2)  Dr. Abbasi's November 30, 2004 RFC Assessment

Plaintiff's next argument not supported by any legal authority, and it is more easily quoted than explained:

> The Physical Residual Functional Capacity Assessment of the Michigan Disability Determination Service, (DDS), relied on by the ALJ i[n] her decision is fatally flawed.
> There is a statement that 'CLT IS ABLE TO DO MOST ALL ADL'S; ([A.]R. 187). The treating physician disagrees ([A.] R. 218). The testimony of plaintiff is that she needs assistance in dressing and grooming ([A.]R. 702-05). The RFC also states that plaintiff suffered no trauma. In fact, her right forearm suffered a severe laceration in the June 24, 1989 accident. ([A.] R. 229). It is clear that this condition has worsened and was a factor in the decision to attempt the carpal tunnel release.

(Plf. Brief at 15-16). The ALJ based her factual finding regarding plaintiff's RCF on the entire record, not just the small excerpt from the November 30, 2004 Physical Residual Functional Capacity Assessment by Saadat Abbasi, M.D. cited by plaintiff. (Exhibit 5F, A.R. 182-89). Dr. Abbasi's RFC assessment is not even cited in the ALJ's opinion. (A.R. 19-28). The ALJ's RFC determination is before the court for review, not Dr. Abbasi's.[6]

The scattered excerpts from the administrative record emphasized by plaintiff do not undermine the substantial evidence supporting the ALJ's RFC determination. The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. Dr. Hoffman's statement recording plaintiff's description of her subjective limitations was not entitled to any particular weight.[7] *See Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007)*; Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v.*

---

[6]Dr. Abassi's RFC assessment supported the denial of plaintiff's claim on initial review. (A.R. 40-41, 56-59). He found that plaintiff's subjective complaints were not fully credible:

> CLT IS A 35 YR OLD FEMALE WITH A HX OF LOWER BACK PAIN & BILATERAL CARPAL TUNNEL; SHE HAS NOT HAD ANY INJURY OR TRAUMA; CLT IS ABLE TO DO MOST ALL ADLS [activities of daily living]; ON OBSERVATION SHE APPEARED APPROPRIATE IN HER PRESENTATIONS; CLT IS CONSIDERED PARTIALLY CREDIBLE.

(A.R. 187).

[7]The ALJ was well-acquainted with the statement Dr. Hoffman submitted to the Michigan Department of Social Services (A.R. 218): "In January 2006, Tim Hoffman, M.D. of Family Medical Center, reported that the claimant had chronic chest pain, chronic back pain and bilateral carpal tunnel syndrome. Dr. Hoffman noted that the claimant needed help with bathing, grooming, dressing, meal preparation, food shopping/errands, and light house cleaning. Dr. Hoffman stated that the claimant was not able to work at her usual occupation for six months. Dr. Hoffman reported that the claimant could do light sedentary work." (A.R. 22). A claimant's RFC, credibility, and whether she is disabled are all issues reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e); *see also Deaton v. Commissioner*, 315 F. App'x at 598; *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

*Commissioner*, No. 08-6244, 2009 WL 1531879, at * 5-6 (6th Cir. June 2, 2009). Dr. Hoffman declined to certify that plaintiff required assistance with any personal care activities. (A.R. 218, ¶ I). The ALJ never stated that plaintiff had suffered "no trauma." Fifteen years before plaintiff's alleged onset of disability, at age 20, she injured her right forearm when she put her fist and forearm through a window. (A.R. 229). On September 10, 2004, Theodore C. Yee, M.D., performed an open right carpal tunnel release (A.R. 166, 168). Dr. Yee kept plaintiff off work for four weeks for her post-surgical recovery (A.R. 167). The ALJ's RFC determination included limitations regarding plaintiff's use of her hands and arms. (A.R. 24). I find no error.

  (3) Plaintiff's Mental Impairments

The ALJ's RFC determination included significant restrictions related to plaintiff's mental impairments:

> The claimant reads at a sixth grade level. She can only do simple unskilled work, with a specific vocational preparation (SVP) rating of 1 or 2, that does not involve maintaining intense concentration, although she can remain on task. The claimant can only perform jobs that have brief and superficial contact with the public, and are routine low stress that do not involve frequent changes or adaptations. She can only do jobs that [do not] require initiative or making independent decisions. The claimant can do no jobs with production quotas or keeping pace with co-workers.

(A.R. 24).

Plaintiff argues that the ALJ failed to adequately take into account the results of a consultative examination conducted on July 24, 2007, by Richard King, Ed.D., a limited license psychologist. (A.R. 660-65). (Plf. Brief at 1, 4, 8, 17-18; Reply Brief at 1-2). It is undisputed that plaintiff was evaluated by Psychologist King on a referral from plaintiff' attorney. (A.R. 660). The ALJ rejected Psychologist King's conclusions because they were inconsistent with the record as a

whole. (A.R. 26). She noted that there was "no evidence in the file prior to Dr. King's report to indicate that the claimant was severely depressed." (A.R. 26). There was no evidence that plaintiff would be severely depressed "for a continuous period of twelve months." (A.R. 26). The GAF score of 48 supplied by Psychologist King was not binding nor persuasive. (A.R. 26-27). It was inconsistent with plaintiff's daily activities. (A.R. 27). All the ALJ's findings in this regard are well-supported.

Further, the ALJ was not required to give any weight to the psychologist's GAF score. *Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7.

The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."  *Kornecky*, 167 F. App'x at 511.  I find no error.

## Recommended Disposition

For the reasons set forth herein, I recommend that a judgment affirming the Commissioner's decision be entered.


Dated:   September 11, 2009          /s/  Joseph G. Scoville
                                     United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).